### AFFIDAVIT OF SPECIAL AGENT JULIE FITZPATRICK
### IN SUPPORT OF A CRIMINAL COMPLAINT

I, Julie A. FitzPatrick, being duly sworn, state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent of the Internal Revenue Service Criminal Investigation ("IRS-CI") and have been so employed since 2005. I am currently assigned to the Securities Fraud squad within the Boston Division of the Federal Bureau of Investigation ("FBI"). In that capacity, my responsibilities include the investigation of federal offenses including, but not limited to, tax fraud, money laundering, and other financial crimes. During my employment with IRS-CI, I have conducted and/or assisted in criminal investigations involving tax fraud, money laundering, violations of the Bank Secrecy Act, and other federal violations.

2. I am currently conducting an investigation of SHIVANI PATEL ("PATEL") and others for violations of certain federal laws, including: bank fraud, wire fraud, money laundering, unlawful monetary transactions, and false statements in a federal tax return.

3. I make this affidavit in support of a criminal complaint charging PATEL with bank fraud, in violation of 18 U.S.C. § 1344. Specifically, as set forth below, I have probable cause to believe that PATEL engaged in a scheme and artifice to defraud and obtain money—to wit, a $20,635.55 check sent to her then employer ("Company A"), a technology company based in Waltham, Massachusetts, which was deposited into a bank account PATEL controlled on or about March 3, 2017—that was in the custody and control of a domestic financial institution by means of materially false and fraudulent pretenses and representations.

4. The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrants

1

and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE TO BELIEVE THAT A FEDERAL CRIME WAS COMMITTED BY PATEL

5. PATEL is currently a resident of Vineyard Haven, Massachusetts.

6. In or around May 2010, Company A hired PATEL to work as an executive assistant to its chief financial officer. As part of her duties, PATEL was in charge of retrieving incoming U.S. mail from Company A's P.O. Box in Waltham, Massachusetts, including mail containing customer checks made payable to Company A. PATEL and Company A's CFO were the only employees authorized to pick up Company A's mail from the P.O. Box. After retrieving the mail, PATEL was then responsible for recording customer checks into Company A's payment system and depositing customer checks into Company A's bank account.

7. On or around February 2, 2012, a company with a name nearly identical to that of Company A—to wit, Company A's name with an "s" added to the end—was incorporated in Massachusetts ("Sham Company A"). Sham Company A's incorporation materials, as filed with the Massachusetts Secretary of State, named PATEL as Sham Company A's president, treasurer, secretary, and sole director. In addition, these materials also listed Sham Company A's "principal office" as PATEL's residence at the time in Hudson, Massachusetts.

8. Thereafter, on or about February 23, 2012, PATEL opened a business checking account ending in -7941 in the name of Sham Company A ("PATEL 7941") at St. Mary's Credit Union in Marlborough, Massachusetts—a financial institution as defined in Title 18, United States Code, Section 20—that listed PATEL as the sole authorized signatory.

Overview of PATEL's Scheme

9. From at least in or about February 2012 through in or about July 2017, PATEL stole over $3 million from her employer by diverting customer checks made payable to Company A, and fraudulently depositing them into PATEL 7941 by misrepresenting Sham Company A as an appropriate payee. A review of Sham Company A bank records revealed that approximately 98 checks made payable to Company A were deposited into PATEL 7941 during this scheme. These checks totaled approximately $3,076,369.88.

10. PATEL used her position at Company A to implement this scheme. Since at least 2011, PATEL was responsible for collecting customer checks from Company A's incoming mail at a P.O. Box, processing customer payments, and depositing these customer checks into Company A's bank account. As part of her job, after retrieving the checks from the mail, PATEL was supposed to credit the customer account in Company A's billing system. However, in an effort to conceal her scheme, PATEL created false entries in Company A's billing system associated with the checks that she stole to make it appear as if Company A had been paid by its customers.

11. Between February 23, 2017 and May 11, 2017, for example, a customer of Company A located in Miami Beach, Florida ("Customer A") mailed four checks—totaling $82,339.77—to Company A's P.O. Box in Waltham, Massachusetts. Each check was drawn upon Customer A's bank account at Centennial Bank, a financial institution as defined in Title 18, United States Code, Section 20.

12. After retrieving the checks from Company A's mail, on or about the date reflected below, PATEL created the entries into Company A's billing system to make it appear as if Customer A's invoices had been paid:

| Customer | Added By | Method | Info | Date | Amount | Linked Invoice Unpaid Amount |
|---|---|---|---|---|---|---|
| Customer A | PATEL | Check | 1012 | 03/02/2017 | $20,635.55 | $0.00 |
| Customer A | PATEL | Check | 1017 | 03/16/2017 | $20,681.27 | $0.00 |
| Customer A | PATEL | Check | 1035 | 04/22/2017 | $20,477.20 | $0.00 |
| Customer A | PATEL | Check | 1046 | 05/16/2017 | $20,545.75 | $0.00 |

13.     However, while Customer A sent the above checks to Company A, none of these checks were deposited into Company A's bank account.  Rather, by fraudulently misrepresenting Sham Company A to be the appropriate payee for the Customer A checks made payable to Company A, PATEL was able to deposit each check into Sham Company A's bank account at St. Mary's Credit Union.  Thereafter, Centennial Bank made the payments for each of the four checks, and the funds were deposited in Sham Company A's bank account.  The following chart, which is based on bank statements from St. Mary Credit Union and cancelled checks from Centennial Bank, summarizes when the payments associated with Customer A's checks were deposited into PATEL 7941:

| Check Number | Check Date | Amount | Payment Deposited Into PATEL 7941 |
|---|---|---|---|
| 1012 | 02/23/2017 | $20,635.55 | 03/03/2017 |
| 1017 | 03/09/2017 | $20,681.27 | 03/17/2017 |
| 1035 | 04/13/2017 | $20,477.20 | 04/24/2017 |
| 1046 | 05/11/2017 | $20,545.75 | 05/16/2017 |

14.     On or about March 15, 2018, Company A's CFO was interviewed by agents conducting this investigation regarding the above payments from Customer A.  The CFO confirmed that in or around 2017 Company A began an audit that uncovered that a number of checks—despite appearing as paid in the billing system—could not be reconciled in Company A's bank accounts, including the four checks mailed by Customer A discussed above.  After discovering this discrepancy, the CFO reached out to Customer A to inquire about these payments.

Customer A responded by providing the CFO with copies of the cancelled checks from Centennial Bank, which showed that each of the four checks had been deposited at St. Mary's Credit Union—even though Company A did not maintain a bank account there—and those payments had been drawn upon Customer A's bank account at Centennial Bank.

### PATEL's Use of Stolen Funds

15. On February 23, 2012, PATEL opened PATEL 7941 at St. Mary's Credit Union. Shortly thereafter, beginning on or about March 5, 2012, PATEL starting depositing checks meant for Company A into PATEL 7941.

16. Records from St. Mary's Credit Union show that 99% of all money deposited into PATEL 7941 (*i.e.*, $3,076,369.88 out of $3,102,192.51) came from checks stolen from Company A, as detailed below:

| Source of Funds Deposited in PATEL 7941 | Amount |
|---|---|
| Company A Checks | $3,076,369.88 |
| Other Deposits | $ 9,422.63 |
| Transfers from other PATEL accounts | $ 16,400.00 |
| **TOTAL** | **$3,102,192.51** |

17. To conceal the embezzled nature of these funds, PATEL proceeded to funnel the proceeds of her scheme initially deposited into PATEL 7941 through additional accounts opened at St. Mary's Credit Union. These accounts included: (a) a joint checking account ending in -6654 that PATEL shared with her husband ("PATEL 6654"); and (b) a joint checking account ending in -6710 that PATEL shared with her minor son ("PATEL 6710").

18. Between approximately March 2012 and July 2017, for example, PATEL transferred $1,897,017.23 from PATEL 7941 (*i.e.*, Sham Company A's account) into PATEL 6654 (*i.e.*, the joint account opened in the name of PATEL and her husband). PATEL and her husband then spent money from PATEL 6654 on personal items, such as cars (*i.e.*, on or

about July 1, 2015 a $2,000 to "Audi Fincl, Tel. Web Debit"), mortgages (*i.e.*, on or about July 1, 2015 a $1,500 to "Ocwen Loan Serv Online Pmt"), and credit cards bills (*i.e.*, on or about July 14, 2015 a $1,843.50 to "Discover E-payment").

PATEL's Purchase of Martha's Vineyard
<u>Property with Stolen Funds</u>

19. In or about 2015, PATEL used $582,000 of the money she embezzled to purchase a home in Martha's Vineyard.

20. On or about June 1, 2015, PATEL transferred $462,542.37 from PATEL 7941 to make an initial deposit into PATEL 6710. Between on or about June 2, 2015 and July 20, 2015, PATEL transferred an additional $56,000 from PATEL 7941 to PATEL 6710. The following represents all transfers made into PATEL 6710 from PATEL 7941:

| Date | Description | Amount |
|---|---|---|
| 06/01/2015 | Transfer from PATEL 7941 to PATEL 6710 | $462,542.37 |
| 06/02/2015 | Transfer from PATEL 7941 to PATEL 6710 | $16,000.00 |
| 06/15/2015 | Transfer from PATEL 7941 to PATEL 6710 | $20,000.00 |
| 07/20/2015 | Transfer from PATEL 7941 to PATEL 6710 | $20,000.00 |
| TOTAL | | $518,542.37 |

St. Mary's Credit Union records show that 97% of all money deposited into PATEL 6710 (*i.e.*, $518,542.37 out of $530,042.37) came from checks stolen from Company A that had previously been deposited by PATEL into PATEL 7941. The remainder of the funds deposited into PATEL 6710 came from PATEL 6654 (*i.e.*, one $11,500 deposit) or interest payments from St. Mary's Credit Union (*i.e.*, $112.66).

21. On or about July 9, 2015, PATEL 6654 had a balance of approximately $2,735.77. On the same day, PATEL wrote check #422 to "Martha's Vineyard Island Wide

Realty" for $64,000 out of PATEL 6654. The check memo field referenced "P&S Deposit, ███████" On the following day, on or about July 10, 2015, PATEL transferred $68,000 from PATEL 7941 to PATEL 6654 to cover this check.

22.     On or about August 21, 2015, PATEL withdrew $518,000 from PATEL 6710 and purchased an official bank check for $518,000 from the St. Mary's Credit Union. After this withdrawal, with the exception of interest payments, no further activity has occurred in PATEL 6710.

23.     On or about September 1, 2015, according to real estate records, PATEL and her husband purchased ███████████ in Vineyard Haven, Massachusetts for $640,000.

24.     In or about 2017, PATEL moved to this home in Vineyard Haven, Massachusetts. Initially, after the move, she continued to work for Company A remotely from Martha's Vineyard. On or about July 1, 2017, however, PATEL was terminated from Company A for reasons unrelated to her theft.

## CONCLUSION

25.    Based on my knowledge, training and experience, and the facts set forth in this affidavit, I respectfully submit that there is probable cause to believe that PATEL committed bank fraud, in violation of Title 18, United States Code, Section 1344, by, on or about March 3, 2017, fraudulently misrepresenting Sham Company A to be an appropriate payee of a $20,635.55 check belonging to Company A.

Respectfully submitted,

*[signature]*
Julie A. FitzPatrick
Special Agent
Internal Revenue Service Criminal
Investigation

Subscribed and sworn to before me
on June 18, 2019

*[signature]*
The Honorable Judith G. Dein
United States Magistrate Judge